# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Edward Oluranti Idowu,
    Petitioner

vs                                              Case No. 1:03cv709
                                                (Spiegel, S.J.; Hogan, M.J.)

Michael Walton, Hamilton
County Chief Probation Officer,
    Respondent

## REPORT AND RECOMMENDATION

    By separate Order issued this date, petitioner's motion for reconsideration of a Report and Recommendation entered on January 13, 2006 in this habeas corpus action brought pursuant to 28 U.S.C. § 2254 (Doc. 8) has been granted. Therefore, the matter is again before the Court for consideration of petitioner's grounds for relief alleged in his petition and respondent's return of writ. (Docs. 1, 3).

### Procedural Background

    The procedural background of this case was extensively discussed in the Report and Recommendation issued January 13, 2006, which is hereby incorporated by reference herein. (*See* Doc. 4, pp. 1-5).

    Petitioner is represented by counsel in this proceeding. In his petition for writ of habeas corpus, he challenges his conviction in October 2000 by the Hamilton, County, Ohio Court of Common Pleas upon his entry of guilty pleas to two charges

of gross sexual imposition. (Doc. 1). Petitioner, who is a Nigerian citizen, essentially alleges in three grounds for relief that he was denied effective assistance of counsel based on his trial counsel's failure to advise him about the deportation consequences of his guilty pleas, and that he was denied due process when the trial court also failed to adequately inform him of the deportation consequences of his pleas in violation of Ohio R. Crim. P. 11(C)(2) and Ohio Rev. Code § 2943.031. (*Id.,* pp. 5-6).

As discussed in the prior Report and Recommendation issued January 13, 2006 (*see* Doc. 4, pp. 2-5), petitioner unsuccessfully sought to obtain relief from the state courts by filing a motion to withdraw his guilty pleas or, alternatively, to vacate the trial court's judgment and sentence, the denial of which was upheld on appeal to the Ohio Court of Appeals, First Appellate District, and the Ohio Supreme Court. Petitioner also unsuccessfully sought reconsideration of his motion to withdraw his guilty pleas prior to filing the instant action. (*Id.,* p. 5).

It appears from petitioner's recent motion for reconsideration filed in the instant action that he attempted a second time during the pendency of this case to have the trial court reconsider its order denying his motion to withdraw his guilty pleas, based on a December 2004 decision by the Ohio Supreme Court, wherein it was held that the state trial court must substantially comply with Ohio Rev. Code § 2943.031, "which supplies the language a trial court accepting a plea of guilty or no contest is to use to warn a noncitizen criminal defendant of the possible consequences (deportation, exclusion, or denial of naturalization) of a criminal conviction," *State v. Francis,* 820 N.E.2d 355, 357 (Ohio 2004). (*See* Doc. 8, Ex. 1). The motion was denied without opinion on June 9, 2005. (*Id.,* Ex. 2). Petitioner appealed this decision to the Ohio Court of Appeals, First Appellate District. (*Id.,* Exs. 3-4). However, as it had reasoned in dismissing the appeal from the state trial court's denial of petitioner's first reconsideration motion, the Court of Appeals granted the State's motion to dismiss the appeal on the ground that the denial of the motion for reconsideration was "not a final appealable order." (*Id.*, Exs. 5-6).

Respondent has filed a return of writ, wherein he concedes that petitioner's petition for writ of habeas corpus does not present any statute of limitations concerns. (Doc. 3, Brief, p. 4). Respondent has contended, however, that the petition is subject to dismissal without prejudice based on petitioner's failure to exhaust available state court remedies. (*Id.,* pp. 3-4).

Persuaded by respondent's exhaustion argument, this Court issued a Report and

2

Recommendation on January 13, 2006 to administratively stay the action and terminate the case on the Court's active docket so that petitioner could exhaust the arguably available state remedies of a delayed appeal under Ohio R. App. P. 5(A) to the Ohio Court of Appeals and a post-sentence motion to withdraw his guilty pleas under Ohio R. Crim. P. 32.1, which is now recognized as an appropriate remedy in Ohio under the authority of the Ohio Supreme Court's decision in *State v. Bush,* 773 N.E.2d 522, 526 (Ohio 2002). (*See* Doc. 4). In so recommending, however, the Court expressed a concern that "requiring exhaustion in this case may be futile and would merely amount to a waste of judicial resources based on the undisputed factual findings [regarding the underlying merits of petitioner's unexhausted claims] made by the Ohio Court of Appeals" in its decision affirming the denial of petitioner's initial motion to withdraw his guilty pleas, or alternatively, to vacate the trial court's judgment and sentence. (*Id.*, p. 8; *see also* Doc. 3, attached Ohio Court of Appeals' decision in *State v. Idowu,* No. C-10646 (Ohio Ct. App. June 28, 2002)).

Thereafter, petitioner's counsel filed a motion for reconsideration of the January 13, 2006 Report and Recommendation issued in this case. (Doc. 8). In the motion, petitioner essentially argues that he exhausted all available state court remedies when he sought to obtain relief from the state courts during the pendency of this action by way of a second motion for reconsideration of the trial court's order denying his motion to withdraw his guilty plea, or alternatively, to vacate the judgment of conviction and sentence. (*See id.* & attached exhibits). However, petitioner still has not sought relief in the state courts by utilizing the arguably available remedies specifically cited and discussed in the January 13, 2006 Report and Recommendation. (*See* Doc. 4, pp. 7-8).

Although there is a strong presumption in favor of requiring exhaustion of state remedies, *see Granberry v. Greer,* 481 U.S. 129, 131 (1987), the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies. *See* 28 U.S.C. § 2254(b)(2). As discussed *infra* pp. 4-9, to the extent petitioner's claims for relief are cognizable in this federal habeas action, they are clearly lacking in merit. Therefore, on reconsideration of the January 13, 2006 Report and Recommendation, the Court has decided to address petitioner's claims for relief and deny the petition with prejudice notwithstanding petitioner's failure to exhaust any remedies that possibly remain for him to pursue in the state courts.

**OPINION**

**Petitioner Is Not Entitled To Relief Because His Constitutional
Claims Lack Merit And His Claims Of Error Under State Law
Are Not Cognizable In This Federal Habeas Proceeding**

Petitioner alleges in the petition that he was denied due process when, in violation of state law, the trial court failed to inform him of the deportation consequences of his guilty pleas. He also claims that his trial counsel was ineffective because he failed to advise him of the likelihood of his deportation as a result of his criminal conviction based on his guilty pleas.

As an initial matter, to the extent petitioner contends the state trial court abused its discretion and violated state-law requirements established in Ohio R. Crim. P. 11 or Ohio Rev. Code § 2943.031 for warning non-citizens of the deportation consequences of their guilty pleas, as well as state cases interpreting those requirements, his claims raise issues of state law only that are not cognizable in this federal habeas corpus proceeding. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, law or treaties of the United States and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984). *Cf. Xie v. Edwards,* 35 F.3d 567 (table), No. 93-4385, 1994 WL 462143, at **2 (6th Cir. Aug. 25, 1994) (unpublished) (holding that district court "properly found that whether the [state] trial court abused its discretion in denying Xie's motion to withdraw his plea is a question governed by Ohio's statutes and case law, and that "[s]uch state grounds cannot support federal habeas relief, absent a showing that the alleged error rendered the proceedings fundamentally unfair").

Here, petitioner challenges the trial court's refusal to allow him to withdraw already-entered guilty pleas. Once a guilty plea has been knowingly and voluntarily entered, a defendant has no absolute, constitutional right to withdraw it. *Jacoy v. Anderson,* No. 80-1220 (6th Cir. Feb. 16, 1981) (unpublished) (available on LEXIS); *see also United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 109-110 (2nd Cir. 1970), *cert. denied,* 402 U.S. 909 (1971); *Hoffman v. Jones,* 159 F.Supp.2d 648, 655 (E.D. Mich. 2001), *aff'd,* 53 Fed.Appx. 342 (6th Cir. Dec. 17, 2002), *cert. denied,* 540 U.S. 1193 (2004). Therefore, in the absence of a constitutional violation in the taking of the plea, a trial court's abuse of discretion in denying a subsequent motion to withdraw the plea does not trigger constitutional concerns. *Hoffman,* 159 F.Supp.2d

at 655; *see also Mancusi,* 429 F.2d at 110; *Carrasquillo v. LeFevre,* 504 F. Supp. 129, 131 (S.D.N.Y. 1980); *cf. Stinson v. Turner,* 473 F.2d 913, 917 (10th Cir. 1973); *United States v. Waucaush,* 230 F.3d 1361 (table), No. 99-1316, 2000 WL 1478361, at ** 3 (6th Cir. Sept. 27, 2000) (unpublished) (involving motion to withdraw a guilty plea prior to sentencing in federal criminal case).

Petitioner essentially argues that a constitutional violation occurred in the taking of his plea because he could not knowingly, voluntarily or intelligently enter his pleas without first being adequately informed by either his attorney or the court of the deportation consequences of his criminal conviction.

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *see also Brady v. United States,* 397 U.S. 742, 748 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.), *cert. denied,* 512 U.S. 1222 (1994). In *Brady,* the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats ..., misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (quoting *Shelton v. United States,* 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds,* 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Id.* at 749; *King,* 17 F.3d at 153 (and cases cited therein).

Although the defendant must be apprised of the "direct consequences" of entering a guilty plea for the plea to be deemed voluntary, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea. *King,* 17 F.3d at 153; *see also El-Nobani v. United States,* 287 F.3d 417, 421 (6th Cir.), *cert. denied,* 537 U.S. 1024 (2002). The fact that a conviction based on a guilty plea can be used for sentence enhancement purposes in a subsequent prosecution resulting from a pending investigation is merely a "collateral

5

consequence" about which a defendant need not be advised. *King,* 17 F.3d at 153-54 (and cases cited therein). Moreover, the Sixth Circuit has held due process does not require that a defendant be advised of the parole consequences of his plea, including ineligibility for parole. *Id.* at 154; *Brown v. Perini,* 718 F.2d 784, 788-89 (6th Cir. 1983); *but cf. Sparks v. Sowders,* 852 F.2d 882, 885-86 (6th Cir. 1988) (petitioner's guilty plea to murder charge may have been rendered invalid by his counsel's allegedly gross mis-advice to the effect that he could receive a life sentence without parole if he proceeded to trial, when in reality petitioner did not face such consequences and would have been eligible for parole even if he were convicted of murder and given a life sentence). On the other hand, for a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *King,* 17 F.3d at 154; *Hart v. Marion Corr. Instit.,* 927 F.2d 256, 259 (6th Cir.), *cert. denied,* 502 U.S. 816 (1991).

Although it appears the Supreme Court has not addressed the specific issue at hand as to whether the likelihood of deportation of a non-citizen criminal defendant is a direct consequence of his or her guilty plea, or merely a collateral one, the consensus among the lower courts, including the Sixth Circuit, is that it is "collateral." *See, e.g., El-Nobani,* 287 F.3d at 421 (and cases cited therein from the Third, First, Eleventh and D.C. Circuits); *see also Resendiz v. Kovensky,* 416 F.3d 952, 956-57 (9th Cir.), *cert. denied,* 126 S.Ct. 757 (2005); *Madriz-Alvarado v. Ashcroft,* 383 F.3d 321, 335 (5th Cir. 2004) (and cases cited therein) (stating that "it has long been settled that a plea is not rendered constitutionally infirm because the defendant was not aware of the immigration consequences of a conviction pursuant thereto or because counsel or the court failed to advise him thereof"); *Broomes v. Ashcroft,* 358 F.3d 1251, 1256-57 & n.4 (10th Cir.) (and cases cited therein) (rejecting claim by state prisoner that the failure of his counsel to advise him of the possibility of deportation as a "collateral consequence" of his guilty plea constituted ineffective assistance under the Sixth Amendment), *cert. denied,* 543 U.S. 1034 (2004).

In *El-Nobani,* the Sixth Circuit expressly rejected the argument that deportation can no longer be considered "collateral" under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 546, which gives the INS "little if any discretion to grant deportation relief for those individuals . . . who are convicted of certain crimes." *El-Nobani,* 287 F.3d at 421. The court reasoned:

6

> First, although the INS has been restricted in its ability to grant certain discretionary relief in deportation proceedings, "there is no indication that the INS has ceased making this sort of determination on a case-by-case basis." *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 484 n.8 . . . (1999). Second, the automatic nature of the deportation proceeding does not necessarily make deportation a direct consequence of the guilty plea. A collateral consequence is one that "remains beyond the control and responsibility of the . . . court in which that conviction was entered." *United States v. Gonzalez,* 202 F.3d 20, 27 (1st Cir. 2000). While this Court has not specifically addressed whether deportation consequences are a direct or collateral consequence of a plea, it is clear that deportation is not within the control and responsibility of the [trial] court, and hence, deportation is collateral to a conviction. . . . Thus, the fact that petitioner was unaware of the deportation consequences of his pleas does not make his pleas unknowing or involuntary.

*Id.* (case citations from other circuits omitted); *see also Resendiz,* 416 F.3d at 956-57 (similarly rejecting the argument that immigration consequences of a plea can no longer be considered "collateral" under the IIRIRA and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) in holding that "immigration consequences of a state conviction continue to be collateral"); *Broomes,* 358 F.3d at 257 & n.4 (and cases cited therein).

 Accordingly, even if petitioner were completely unaware of the deportation consequences of his pleas, the trial court was not required by the Constitution to inform petitioner of such consequences before accepting his guilty pleas. Petitioner's claims stemming from the trial court's failure to advise him of the deportation consequences of his pleas, therefore, fail to implicate constitutional concerns that may be remedied in this federal habeas proceeding. For the same reason, petitioner's ineffective assistance of counsel claim must fail to the extent that petitioner contends his guilty pleas are constitutionally invalid due to any failure by his trial attorney to advise him of the deportation consequences of his pleas. *Cf. Resendiz,* 416 F.3d at 957; *Broomes,* 358 F.3d at 1257.

 Finally, as a factual matter, petitioner cannot prevail on any claim that his counsel was ineffective under the Sixth Amendment because he failed to satisfy the more stringent state requirement set forth in Ohio Rev. Code § 2943.031(A), which

provides in relevant part that before a guilty plea to a felony indictment can be accepted, a non-citizen defendant must be "advised that the conviction of the offense to which [he is] pleading guilty . . . may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization." *Cf. State v. Francis,* 820 N.E.2d 355, 358-59, 360 (Ohio 2004) (stating that "[a]lthough the R.C. 2943.031(A) warning is not constitutionally required . . ., a failure to give it carries the consequences set forth in R.C. 2943.031(D)," i.e., "the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty . . . and enter a plea of not guilty").

As discussed in the January 13, 2006 Report and Recommendation (Doc. 4, pp. 2-4, 8), the Ohio Court of Appeals rejected petitioner's ineffective assistance of counsel claim based on its factual finding, which must be presumed correct under 28 U.S.C. § 2254(e)(1),[1] that contrary to petitioner's contention, petitioner's trial counsel "had advised [petitioner] of the possibility of deportation in explaining the consequences of his guilty plea." (Doc. 3, attached June 28, 2002 *Idowu* decision). In so finding, the court pointed out that petitioner had executed a plea form which expressly provided in pertinent part:

> I . . . am not . . . a citizen of the United States of America. I understand that if I am not a citizen of the United States, a conviction of the offense(s) to which I am pleading guilty may have the consequence of deportation, exclusion from the admission to the United States, or denial of naturalization pursuant to the laws of the United States. I have read this form and I knowingly, voluntarily and intelligently enter this guilty plea.

(*Id.*). The court also relied on an affidavit submitted by petitioner's trial counsel,

---

[1] As noted in the January 13, 2006 Report and Recommendation (*see* Doc. 4, p. 2 n.1), 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner, who is represented by counsel in the instant proceeding, has not disputed the state appellate court's factual findings; nor does the record contain clear and convincing evidence to rebut the Ohio court's factual findings quoted herein. Therefore, petitioner has not met his burden of demonstrating that such findings are erroneous.

stating that "while he was not familiar with current federal law regarding legal aliens, he had read the guilty plea form," which contained the language advising of the potential for deportation, to petitioner. (*Id.*). In light of these findings, which have not been disputed by petitioner or his counsel in this proceeding, the Court concludes that petitioner's claims challenging the constitutionality of his guilty pleas and his trial counsel's representation of him in the state proceedings clearly lack merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue because petitioner has failed to make a substantial showing of the denial of a constitutional right, which may be remedied in this federal habeas corpus proceeding, based on his claims for relief addressed on the merits herein. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date:  3/2/2006                                          s/Timothy S. Hogan
         cbc                                                        Timothy S. Hogan
                                                                    United States Magistrate Judge

J:\BRYANCC\2006 habeas orders\03-709denypet.gp-deport.wpd

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Edward Oluranti Idowu,
    Petitioner

vs.      Case No. 1:03cv709
    (Spiegel, S.J.; Hogan, M.J.)

Michael Walton, Hamilton
County Chief Probation Officer,
    Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).